UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

VIA DESIGN ARCHITECTS, PC,

                    Plaintiff,

v.                                        Civil No. 2:13cv555

U.S. DEVELOPMENT CO., LLC,

                    Defendant.


## OPINION AND ORDER

This matter is before the Court on a motion for summary judgment filed by defendant U.S. Development Co., LLC ("USD" or "Defendant") and a cross-motion for partial summary judgment filed by plaintiff VIA design architects, pc ("VIA" or "Plaintiff"). For the reasons set forth below, Defendant's motion for summary judgment is **DENIED** based on Defendant's judicial admissions. Plaintiff's cross-motion for partial summary judgment is **DENIED** based on the existence of disputed material facts.

## I. Factual Background

In early 2010, USD hired VIA to perform architectural services associated with the planned redevelopment of a historical building in downtown Norfolk, Virginia ("the

Project"). The initial agreement between VIA and USD is evidenced by a written fee proposal in which VIA calculated the estimated architectural costs for the Project to be $675,631. ECF No. 13, at 6; ECF No. 40-1, at 8. The parties did not, however, enter into a formal written contract at that time.

VIA began performing architectural work on the Project in early 2010, and submitted monthly progress billings to USD. By the end of May 2011, VIA had billed USD approximately $642,000, and had been paid approximately $450,000. In early June 2011, VIA and USD entered into a "Form AIA B108" written contract for architectural services ("the June 2011 Contract" or "the Contract"), which is a form contract required by the United States Department of Housing and Urban Development ("HUD") when a project will utilize HUD financing. ECF No. 1, at 5; ECF No. 13, at 3. Although the parties' written Contract governs architectural services for the Project and states that it supersedes all prior agreements, the Contract does not appear to acknowledge the fact that VIA had already been working on the Project for a year and a half, and had already performed, and been paid, hundreds of thousands of dollars' worth of services.[1] ECF No. 34-1. Like VIA's prior written estimate, the June 2011 Contract lists VIA's compensation for "basic services" on the

---

[1] Both parties rely on Virginia law as the controlling legal standard for interpretation of the written Contract, and it is therefore presumed that such law is applicable in this case.

Project as $675,631, although additional services are contemplated therein. Id.

The first page of the June 2011 Contract indicates that such agreement was between "VIA design architects, pc" and "the Architect's client identified as the Owner," with the "Owner" being listed as "U.S. Development/The Rockefeller, LLC." ECF No. 34-1, at 12. Thomas Prioreschi, the individual that signed the June 2011 Contract on behalf of the "Owner," has stated in an affidavit that he is the "managing member" of both USD and the separate entity "The Rockefeller, LLC," ECF No. 42-1, at 1, yet when signing the written Contract, Mr. Prioreschi failed to indicate which company he was signing on behalf of, instead simply identifying himself by his printed name followed by the word "Principal," ECF No. 34-1, at 29. The Contract page containing the signature block also includes a cross-reference to several additional documents that "form[] part of the Agreement," to include VIA's prior written estimate to USD, and a "Historic Preservation Certification Application" listing the owner of the property being redeveloped as "Thomas J. Prioreschi" of "US Development." ECF No. 34-1, at 29, 37.

In September of 2012, more than a year after the written Contract was executed, an issue arose between VIA and USD regarding whether VIA would provide additional architectural work on the Project and whether VIA would be timely compensated

for such additional work.  By way of background, although USD had already paid VIA for a substantial portion of its work on the Project during 2010 and early 2011, USD contends in this litigation that the 2011 written Contract only required "the Owner" to pay VIA for a small fraction of the architectural work prior to the "HUD closing."  VIA disputes such assertion, noting that the June 2011 Contract indicates that 80% of the basic services were to be paid to VIA by the "HUD Closing (No later than 11/15/2010)."[2]  ECF No. 34-1, at 30.

Although USD offers a legal challenge to the admissibility of such exhibit, and separately argues that such email was written "under duress," it is undisputed that Thomas Prioreschi sent an email to VIA's president on September 17, 2012 addressing VIA's concern regarding payment for prior work.[3]  The email states as follows:

_____

[2] Such payment provision appears ambiguous on its face as the parties clearly were not contemplating a November 2010 closing when they executed the Contract in June of 2011.

[3] USD's admissibility challenge is based on its claim that the email represents parol evidence outside the written Contract.  However, because the Contract is ambiguous on its face as to the identity of the "Owner," such email is, at a minimum, admissible on the issue of the identity of the contracting parties.  See Aetna Cas. and Sur. Co. v. Fireguard Corp., 249 Va. 209, 215 (1995) ("When a contract is ambiguous, . . . a court should resort to parol evidence to ascertain the true intention of the parties").  As to whether such email was written under duress, the parties dispute the facts relevant to such finding, with USD alleging both that VIA's earlier breach is the reason why such additional services were required and that VIA wrongfully threatened to derail the entire Project by refusing to perform such corrective work without immediate compensation.  VIA, in turn, disputes the assertion that it had previously breached the

4

Donna,

To the best of my ability, this e-mail will address your concern about Via design getting paid fully on the work you have done on this project **prior to the contract** and **during the contract** and your concerns that we have any issue with the invoices that you have sent or for the extra work you are invoicing for in this last burst of work.

**US Development** considers all the invoices received from Via Design valid from the beginning of this job to now that includes contract and pre-contract work. **We** have further signed a contract with your company which **we** intend to fully honor for all the work you have done to this date whether any future closing takes place or not.    HUD guarantees that all professionals are paid by the schedules they allow and while we have to comply with HUD rules I believe those guarantees protect vendors as well as I have seen.   So we and you have to warrant to them at the closing that you are paid current at that point.   We have not gone through and checked the accrued interest computations and we assume those are right.

Further you have estimated an amount of $96,140 which is required to complete extra work to complete the job.   This will be paid **as fast as we can send you the check** for this extra work and we accept that these charges are valid as a result of the meeting we held in your office with you, I and Drew last month.   So this work is considered valid, thereby making all outstanding invoices submitted by Via design as valid (again under assumption that the interest charges are correct) and **will be paid or have been paid or are about to be paid whether the HUD loan closes or not**.

I trust this satisfies all the concerns you have on this matter.

Thomas J. Prioreschi
**U S Development Co.,LLC**

---

Contract, further arguing that VIA was entitled under the Contract to require timely payment for its 2012 services because such work constituted "additional work" as defined in the written Contract.  See ECF No. 37, at 18-19; ECF No. 34-1, at 30.

ECF No. 40-1, at 82 (emphasis added).[4]  It appears that VIA performed the "new work" referenced in the email shortly thereafter, as VIA received a $96,000 payment from USD on October 4, 2012.  Such payment was the last payment received by VIA for work performed on the Project.

In December of 2012, VIA and USD amended their June 2011 Contract to incorporate a new HUD amendment form which purports to modify the HUD form contract for architectural services that was used by the parties in June 2011 ("the HUD Amendment").  ECF No. 34-1, at 77—82.  The HUD Amendment form that was incorporated by reference into the June 2011 Contract has a blank on the first page for the HUD project number it is associated with, has blanks on page four for the identification of other interested business entities, and has blanks on pages five and six for the execution date of the amendment form, and

---

[4] The emphasis is added to the email because USD asserts on summary judgment that "The Rockefeller, LLC" is the only entity obligated in any way to VIA.  Moreover, Mr. Prioreschi has provided a sworn affidavit in support of summary judgment stating that "[n]owhere in the email was there even a suggestion that USD would be, or remain contractually liable for payments that it had never agreed to make in the first place."  ECF No. 42-1, at 3.  Such assertion is coupled with an affirmative attack on VIA for being unfamiliar with the HUD process, apparently advanced on the theory that VIA's alleged misunderstanding trumps the language of the email, which certainly appears to indicate on its face that USD signed the Contract with VIA, that USD would honor all prior invoices from VIA, and that USD, who had made every prior payment to VIA, would (as it later did) make a timely payment for the additional work being requested.  However, because this Court is not permitted to weigh the evidence on summary judgment, it makes no finding regarding such email, and instead merely notes that VIA characterizes Mr. Prioreschi's recent sworn statements as not only inaccurate, but "offensive."  ECF No. 43, at 5.

the signatures of the parties. ECF No. 34-1, at 77-82. It is undisputed that although the parties' Contract was modified in December of 2012 to expressly incorporate by reference the new HUD Amendment form into the prior Contract, neither VIA, USD, nor any other entity, signed, initialed, dated, or filled in any blanks on the HUD Amendment form. Moreover, it does not appear that the parties even exchanged a copy of such Amendment form, but instead merely incorporated such document by reference, presumably to help with the HUD financing process. Notwithstanding the December 2012 Amendment, the Project never received HUD financing, and it appears that the planned redevelopment was terminated at some point in 2013.

## II. Procedural History

VIA filed its complaint in this Court against USD in late 2013 seeking more than $600,000 in damages based on a single count of breach of contract. ECF No. 1. On March 21, 2014, USD filed its answer and counterclaim. ECF No. 13. USD expressly admits in its pleading that it hired VIA to perform architectural services on the Project and that it later entered into the written Contract with VIA. Id. at 3, 6. USD further asserts that VIA breached several duties it owed to USD under such written Contract, which USD attached to its pleading. Id. at 6-11. USD's counterclaim seeks damages from VIA on the lone theory of "breach of contract" and never states, intimates, or

7

otherwise suggests that USD was relying on the enforceability of the written Contract as an "alternative" defense or theory.

Subsequent to filing its answer and counterclaim, USD filed a motion seeking a temporary stay of this litigation based on the alternative dispute resolution provision contained in the parties' written Contract. ECF No. 23. Based on USD's express representations to the Court in its supporting memorandum, the Court granted USD's motion seeking a litigation stay pending arbitration "[i]n compliance with the terms of the parties' contract." ECF No. 25, at 2.

Approximately two months after the expiration of the stay that was entered based on USD's invocation of the contractual arbitration clause, USD filed its motion for summary judgment, and brief in support, asserting for the first time that "VIA is suing the wrong party." ECF No. 34, at 1. USD argued in support of summary judgment that the December 2012 Amendment "made plain" that the "The Rockefeller LLC," and not USD, "was the 'Owner' under the Contract." Id. at 1-2. VIA thereafter filed a cross-motion for partial summary judgment, which among other things, challenges USD's newly advanced efforts to demonstrate that it is not bound by the written Contract. In response, USD appears to go a step further than its prior argument by more directly asserting that, even before the December 2012 Amendment, USD was not a party to the written

8

Contract.   See, e.g., ECF No. 42-1 (affidavit from Mr. Prioreschi asserting that USD had never been contractually obligated to make payments to VIA); ECF No. 42, at 7 (USD's opposition to VIA's summary judgment motion asserting that "USD was not the 'Borrower' or 'Owner'" and that VIA knew such fact "prior to executing both the June 2011 Contract and the 2012 HUD Amendment").[5]

As the cross-motions for summary judgment are now fully briefed, this matter is ripe for review.

### III. Standard of Review

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

---

[5] The Court notes that USD's submissions are at times vague as to which entity USD asserts entered into the Contract with VIA in June of 2011, as USD references actions taken by "the parties" without clarifying whether such term refers to "the parties" in this case, or "the parties" to the Contract.  ECF No. 42, at 6.  To the extent that any of USD's filings are intended to suggest that, more than a year after a party to a written contract has incurred substantial contractual obligations, a third party can be substituted for that contracting party through an amendment to the original contract that lacks any clear language indicating a substitution, novation, or release, USD fails to cite a single case in support of such theory, and well-established law appears to indicate the contrary.  See, e.g., Honeywell, Inc. v. Elliott, 213 Va. 86, 89-90 (1972) (indicating that "it is a well settled principle that novation is never to be presumed" and that the essential requirements of a novation include "the agreement of all parties to the new contract").

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247–48 (1986). A fact is "material" if it "might affect the outcome of the suit," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

If a movant has properly advanced evidence supporting entry of summary judgment, the non-moving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits, sworn statements, or other materials that illustrate a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Fed. R. Civ. P. 56(c). At that point, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. In doing so, the judge must construe the facts and all "justifiable inferences" in the light most favorable to the non-moving party, and the judge may not make credibility determinations. Id. at 255; T-Mobile Northeast LLC v. City Council of City of Newport News, Va., 674 F.3d 380, 385 (4th Cir. 2012).

When confronted with cross-motions for summary judgment, "the court must review each motion separately on its own merits

to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). As to each separate motion, the Court must separately resolve factual disputes and competing rational inferences in favor of the non-movant. Id. When a party's summary judgment motion seeks judgment on a matter for which the opposing party bears the burden of proof, the movant is not required to "produce evidence showing the absence of a genuine issue of material fact," but instead, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004).

## IV. Discussion

### A. Defendant's Motion for Summary Judgment

As indicated above, USD's motion for summary judgment is not based on the facts associated with the parties' performance under the Contract, but is instead based on the newly asserted defense that USD is not a party to such Contract. For the reasons discussed below, the Court **DENIES** such motion based on USD's judicial admission that it is a party to such Contract. Moreover, although not itself a basis for denying summary judgment on the current record, it is notable that such result

11

appears to comport with principles of equity, as well the parties' multi-year course of dealing.[6]

Under federal law, an unequivocal assertion of fact made in a pleading, such as an answer or counterclaim, constitutes a "judicial admission" that generally binds the party making such statement throughout the remainder of the proceeding. See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1197 n.6 (2013) (indicating that the defendant "remains bound" by the factual concession made in its Answer, favorably quoting a Ninth Circuit case for the following proposition: "'Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.'" (quoting American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988))); Worsham v. Accounts Receivable Management, Inc., 497 F. App'x 274, 277 (4th Cir. 2012) ("'A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.'" (quoting Bellefonte Re Ins. Co.

---

[6] Notably, even if USD had, associated with its summary judgment motion, sought to amend its answer/counterclaim in order to withdraw its admission and proceed on the theory that the June 2011 Contract was between VIA and "The Rockefeller, LLC," fairness would have required that the Court permit VIA to amend its complaint to assert, in the alternative, a breach of contract claim against USD based on USD's September 2012 email, and/or a quasi-contract or other equitable claim based on the entire course of dealing between USD and VIA, which predated the June 2011 Contract by more than a year. Accordingly, it appears likely that similar issues would have been litigated in this case regardless of USD's judicial admission.

v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985))); 2 McCormick on Evid. § 254 (7th ed.) (explaining that judicial admissions are "formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact," and that "unless allowed by the court to be withdrawn" such an admission "is conclusive in the case"). As explained earlier this year by the United States Court of Appeals for the Fourth Circuit:

> A judicial admission is a representation that is "'conclusive in the case'" unless the court allows it to be withdrawn. Meyer v. Berkshire Life Ins. Co., 372 F.3d 261, 264 (4th Cir. 2004) (quoting Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (further defining judicial admissions as "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them")). Judicial admissions include "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish [a] waived conclusion of law." Id. at 264-65.

Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 347 (4th Cir. 2014). In addition to the controlling precedent recognizing that both stipulations and assertions in a pleading generally constitute judicial admissions, the Fourth Circuit reiterated in Minter that even a lawyer's oral statements before the Court can constitute binding judicial admissions if they are "'deliberate, clear, and unambiguous.'" Id. (quoting Fraternal Order of

_Police Lodge No. 89 v. Prince George's Cnty., Md._, 608 F.3d 183, 190 (4th Cir. 2010)).

Here, the written Contract at issue, referred to by the parties to this litigation as the "Rockefeller Agreement," states on its face that it is between "the Architect" and "the Owner," the first party clearly being VIA, the identity of the second party being something that was not called into question until USD filed its summary judgment motion asserting that it is not a party to such Contract.  In considering whether USD made a judicial admission in this case, the Court begins with the pleadings themselves, with USD stating as follows in its answer and counterclaim:

> <u>Defendant,    however,    admits    entering    into    the Rockefeller Agreement</u>, but denies that it has breached same, and affirmatively states that VIA has breached the Rockefeller Agreement.
>
> Plaintiff   is   not   entitled   to   recover   under   the Rockefeller   Agreement   because   VIA   was   the   first breaching party by failing, _inter alia_, to <u>notify USD</u> of material information . . . , that if disclosed, would have prompted USD to act differently and save both time and money.
>
> As a material inducement <u>to enter into</u> the Rockefeller Agreement,   <u>USD   relied   upon</u>   VIA's   representations concerning VIA's specialization . . . .
>
> Prior to <u>entering into the Rockefeller Agreement</u>, <u>USD</u> relied upon the representations VIA made with regard to VIA's purported specialization . . . .
>
> As a result of the cost overruns . . . and other issues created by VIA's <u>breach of its contractual</u>

<u>obligations to USD</u>, HUD withdrew its favorable financing on the Project . . . .

VIA was the first breaching party of the Rockefeller Agreement, and therefore was not entitled to receive <u>compensation under the contract from USD</u> from the date of breach forward.

ECF No. 13, at 3-4, 6, 10-11 (emphasis added).

Not only does USD expressly admit in its pleading that it entered into the Rockefeller Agreement, but it advances a single count counterclaim alleging that USD is entitled to damages <u>pursuant to such written Contract</u> based on VIA's alleged breach. USD does not assert an alternative theory of recovery, such as quasi-contract or other equitable relief, nor does it otherwise advance an alternative defense that calls into question USD's status as a party to the written Contract. Rather, USD relies exclusively on the enforceability of the written Contract and attaches a copy of such Contract to its pleading. Based on the law cited above, USD is plainly bound by the clear admission in its pleadings that it is a party to the written Contract before the Court.[7]

---

[7] USD offers no explanation for its recent change in position, and has not filed any motion or other paper seeking to withdraw or amend its prior express admission. Rather than seeking to justify its shift in position, USD's summary judgment filings appear to focus on VIA's alleged misunderstanding of the HUD financing process, arguing that it was abundantly clear from the Contract and various other documents that predate the December 2012 Amendment that the "Owner" and contractually obligated party was "The Rockefeller LLC," and not USD. Assuming, for a moment, that such fact was "abundantly clear" from the relevant documents and HUD regulations to any person with knowledge of the Project, it is curious that, in March of 2014, and again on April

Although this Court finds that USD's statements in its pleading are alone sufficient to constitute a judicial admission, such finding is further bolstered by USD's subsequent representations to the Court in this case. Notably, after filing its answer and counterclaim, USD moved this Court for a stay of litigation pending arbitration as provided by the express terms of the written Contract. In support of such motion, USD made the following clear, direct, and unequivocal representations to this Court:

> This matter involves cross-claims for breach of contract. . . . The Contract, <u>which both parties seek to enforce</u>, contain[s] a mandatory mediation provision at Section 8.2. . . . Accordingly, USD moves the Court to stay this matter pending mediation <u>as the Contract requires</u>. . . . When the parties agree to alternative dispute resolution, it is proper for the Court to stay the proceedings . . . . Because <u>the parties expressly agreed to mediate disputes</u>, the Court is obliged to <u>effect that provision of the Contract</u>. . . . Accordingly, until USD's Counterclaim is mediated, this matter should be stayed <u>as the parties agreed in the Contract that each are seeking to enforce</u>.

ECF No. 24, at 1-3 (emphasis added).[8]

---

30, 2014, more than a year after the Contract was amended, USD's factual and legal position was that USD was in fact a party to the Contract and that USD was entitled to damages under such Contract.

[8] USD's contention in its summary judgment briefs that it did not admit that it was a party to the Contract in seeking a stay selectively quotes the record, and ignores USD's clear and direct statements to this Court in its memo in support of a stay. Similarly, as argued by Plaintiff, ECF No. 43, at 6-7, it appears that USD selectively quotes from its discovery responses in its summary judgment briefing.

A review of relevant case law reveals that courts within this Circuit are at times reluctant to find that a judicial admission was made through statements in a brief because briefs are not "pleadings." See, e.g., Willis v. Wells Fargo Bank, N.A., No. 2:11cv193, 2012 WL 112942, at *8 (E.D. Va. Jan. 12, 2012) (indicating that "'legal memoranda, unlike pleadings or affidavits, do not generally constitute binding judicial admissions' absent language clearly indicating that the filer's intent is to make an admission" (quoting Northern Ins. Co. of New York v. Baltimore Business Communications, Inc., 68 F. App'x 414, 421 (4th Cir. 2003))); Hecht v. American Bankers Ins. Co., No. 3:04cv98, 2005 WL 2716373, at *3 (W.D. Va. 2005) (finding that "the statements in the Defendant's Brief do not constitute a judicial admission"). That said, not only have multiple circuit courts expressly recognized in published opinions that judicial admissions can be made in briefs, see, e.g., American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-27 (9th Cir. 1988) (deciding a question of first impression, and concluding that, similar to the rule adopted by the Tenth Circuit, "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court"), but a published opinion by the Fourth Circuit confirms that a district court has discretion to make such finding as long as the statements at issue are deliberate, clear, and

17

unambiguous, see Meyer v. Berkshire Life Ins. Co., 372 F.3d 261, 264-65 (4th Cir. 2004) (affirming the district court's finding that the defendant's "waiver" of a legal defense that was made in a reply memorandum constituted a judicial admission, further explaining that "[j]udicial admissions are not . . . limited to affirmative statements that a fact exists" but also include "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law"); see also Minter, 762 F.3d at 347.

This Court, like those before it, would be reluctant to read an admission into statements made in a written brief, or at a hearing, that are arguably susceptible to multiple interpretations, particularly when such statements are made in a defensive manner. See, e.g., Fraternal Order of Police Lodge No. 89, 608 F.3d at 189-90 (concluding that the oral statements made by counsel in response to the district judge's statements asserting a conflicting view were not a judicial admission). However, here, USD filed a motion seeking affirmative relief in the form of a stay, and was not in a position where it made a questionable concession when responding to statements made by the Court or opposing counsel. Moreover, USD was not only clear and unequivocal in the statements contained in its brief, but it made such statements with the design to induce the Court to act

18

based on such representations. Accordingly, even to the extent that it is prudent for the Court to proceed with caution when ascribing meaning to an alleged "admission" contained in a brief, because USD's statements were "deliberate, clear, and unambiguous," Minter, 762 F.3d at 347, this Court finds that the form, context, and content of such statements constitute a judicial admission that USD is in fact a party to the written Contract before the Court, cf. In re Lefkas General Partners No. 1017, 153 B.R. 804, 807 (N.D. Ill. 1993) (finding that a written statement identifying the parties that appellant performed services for, that was made during the pendency of bankruptcy proceedings with knowledge that it would be considered by the bankruptcy judge, was sufficient to constitute a judicial admission). Notably, even if USD's statements in its brief are not alone sufficient to constitute a judicial admission that precludes USD from asserting that it is not a party to the written Contract, such statements are surely sufficient when considered in the context of USD's prior express admissions in its pleadings.[9]    Accordingly, the Court finds that USD's

---

[9] The Court notes that, although it does not consider such evidence in making the above finding, numerous facts in the record appear consistent with a finding that USD was a party to the written Contract, including: (1) consistent with USD's admission in its pleadings, documentary evidence demonstrates that USD hired VIA to perform architectural services for the Project more than a year before the written Contract was executed; (2) during the year prior to the execution of the written contract, VIA performed services on the Project pursuant to its informal agreement with USD and USD

unequivocal statements that it entered into the Contract coupled with its efforts to enforce the Contract, both for the purposes of obtaining a litigation stay and for obtaining judgment in its favor on its breach of contract counterclaim, "have the effect of excusing [VIA] from proving the facts necessary to establish" that USD is a signatory to such Contract and that such Contract is enforceable against USD.  Meyer, 372 F.3d at 265.

Separate from the above analysis and finding, the Court notes that because USD has filed a contractual counterclaim that is not advanced in the alternative, and because this Court has previously granted relief to USD in the form of a stay based on USD's express representations to the Court that it is a party to the written Contract before the Court, the doctrine of equitable estoppel arguably prevents USD from shifting its position at this stage in the litigation.  See Jackson v. Iris.com, 524 F. Supp. 2d 742, 749 (E.D. Va. 2007) ("It is an axiomatic rule of contract law that a party may not 'rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage.'" (quoting Hughes Masonry Co. v. Greater Clark

---

compensated VIA more than $450,000 for such services; and (3) in late 2012, more than a year after the Contract was executed, USD appears to have sent an email to VIA's president that states on its face that USD was the party that entered into a contract with VIA.  Although such facts have no bearing on this Court's finding that USD made a judicial admission, they suggest that applying such doctrine results in a fair and just outcome.  Cf. 18 Am. Jur. 2d Corporations § 63 ("[I]t is unjust to permit those who control companies to treat them as single or unitary enterprises and then assert their corporate separateness in order to commit . . . misdeeds with impunity.").

County Sch. Bldg. Corp., 659 F.2d 836, 839 (7th Cir. 1981) (internal quotations and citations omitted))).  "Generally, the doctrine of '[e]quitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity.'"  Id. (quoting International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 417-18 (4th Cir. 2000) (internal quotation marks and citations omitted))).  Although the record is undeveloped as to VIA's reliance on USD's prior position that it is both a party to the Contract and is itself seeking to enforce such Contract, logic suggests that VIA's failure to file a motion seeking to amend its complaint in order to add quasi-contract or other equitable claims demonstrates both "reliance" by VIA as well as prejudice. Moreover, the separate doctrine of "judicial estoppel" is at least implicated by USD's actions because this Court both relied on and adopted USD's position when it granted a litigation stay based on USD's express representation that it was both a party to the Contract and seeking to enforce the Contract.[10]

---

[10] Judicial estoppel requires that a party "intentionally misled the court to gain unfair advantage," and this Court makes no such finding in this case.  Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007) (internal quotation marks and citations omitted).  However, USD's selective citation to the record in its briefs and recent sworn affidavit that arguably mischaracterize the prior statements made by Mr. Prioreschi in the September 2012 email could be viewed as providing at least some suggestion that USD's conduct represents an effort to gain unfair advantage by "playing fast and loose with the

Accordingly, whether estoppel is appropriate to protect USD's adversary (equitable estoppel) or is appropriate to protect the integrity of the judicial process (judicial estoppel), here, rules of equity may separately dictate that USD should not be permitted to "have its cake and eat it too" by acknowledging that it is a party to the Contract to both secure a stay and seek damages under such Contact, only to later argue that it is not now, nor was it ever, a party to such written Contract. Guinness PLC v. Ward, 955 F.2d 875, 899 (4th Cir. 1992) (internal citation omitted).

In summary, because this Court finds that Defendant USD made a judicial admission in its answer and counterclaim, which it later confirmed through deliberate, clear, and unambiguous representations to the Court in a written brief in support of a motion seeking affirmative relief, relief which this Court granted, USD is precluded from now arguing that it is not a party to the Contract before the Court.   USD's motion for summary judgment is therefore **DENIED**.[11]

---

court" through "blowing hot and cold as the occasion demands." King v. Herbert J. Thomas Memorial Hosp., 159 F.3d 192, 196 (4th Cir. 1998).

[11] To the extent USD briefly asserts in its summary judgment filings that VIA has already been overpaid under the Contract and is not entitled to any additional compensation, the same material factual disputes discussed immediately below preclude entry of judgment in favor of USD on the current record.

### B. Plaintiff's Motion for Summary Judgment

VIA's motion for partial summary judgment seeks a damages award in its favor based on USD's failure to pay VIA for architectural services, as required by the parties' written Contract.  As discussed below, notwithstanding USD's dubious assertion that the mere filing of cross-motions for summary judgment itself evidences a lack of factual disputes,[12] the briefs reveal disagreement as to virtually all the relevant facts.  Although many of the factual disputes no longer appear to be material based on USD's judicial admissions, material disputes remain that preclude entry of judgment in VIA's favor, including disputes regarding VIA's overall performance under the Contract, as well as the parties' interactions in late 2012 (including the September 2012 email and December 2012 Amendment).   VIA's motion for partial summary judgment is therefore **DENIED**.

To succeed on summary judgment, VIA, as the moving party, must "show[] that there is no genuine dispute as to any material fact and [that VIA] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Under Virginia law, a party who first materially breaches a contract cannot enforce that contract."

---

[12] Such assertion is not only dubious on its face, but is quickly proven to be false when USD proceeds, in the same brief that is opened with such statement, to expressly "dispute" more than three quarters of Plaintiff's asserted facts, labeling only a handful of such disputes as "disputed but immaterial."  ECF No. 42, at 2-14.

Bennett v. Bank of America, N.A., No. 3:12cv34, 2012 WL 1354546, at *5 (E.D. Va. Apr. 18, 2012) (citing Horton v. Horton, 254 Va. 111, 115 (1997)). Because USD has advanced a counterclaim asserting that VIA was the first party to breach the written Contract, and if such breach is proven, VIA could be precluded from any recovery under the Contract, VIA must "show," that is, "point[] out to [this] court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Although VIA's motion for partial summary judgment seeks a ruling in its favor, VIA's briefs focus primarily on defending against USD's assertion that it is not a party to the written Contract. See ECF No. 43, at 1 (VIA's reply brief indicating that: "The predominant issue before the court . . . is the determination of the proper parties," and that "[s]econdarily, the court must determine the amount of compensation provided by the Rockefeller Agreement"). In light of VIA's efforts to prevail on the first issue, it appears that VIA does not even endeavor to point this Court to an absence of disputed fact as to USD's counterclaim, which asserts that VIA cannot recover damages under the Contract because VIA was the first breaching party. See id. at 4-7 (revealing that the entire focus of VIA's reply brief in support of summary judgment seeks to counter USD's claim that it is not a party to the Contract). Moreover,

24

in opposition to VIA's summary judgment motion, USD has advanced evidence demonstrating a factual dispute as to whether VIA performed its obligations under the Contract, as well as a dispute over how much VIA is due under the Contract. See ECF No. 42-1 (affidavit asserting that, as alleged in USD's counterclaim, VIA withheld material information from "the Owner" during the period of performance, in violation of VIA's contractual duties); ECF No. 42, at 5, (USD's statements of disputed facts challenging the amount VIA claims to be owed under the Contract, which USD asserts is further affected by the December 2012 Amendment);[13] ECF No. 42, at 11 (USD's statements of disputed facts asserting that VIA further breached the Contract in September of 2012 when it threatened to withhold additional services, risking shutting down the Project, unless VIA was paid money to which USD asserts VIA was not contractually entitled); see also ECF No. 39-1, at 4-5

---

[13] The fact that VIA and USD modified their previously finalized written Contract to incorporate by reference a HUD amendment form into such Contract, yet never, as clearly contemplated on the face of the stock HUD Amendment form, filled in any blanks therein, or signed or dated the Amendment form, appears to render such Amendment ambiguous, which opens the matter to parol evidence as to what the parties' intended in December of 2012 when they modified their prior written Contract. Fireguard Corp., 249 Va. at 215. The parties clearly dispute the facts material to such Amendment, with USD asserting that VIA was responsible for filling out the Amendment form if it wanted to protect its rights, and VIA asserting that because USD was the party that needed the HUD amendment incorporated in order to pursue its financing, VIA was waiting for USD to provide a signed copy of the amendment form, which never occurred. See McAfee v. Brewer, 214 Va. 579, 581 (1974) ("It is elementary that an agreement based on mutual assent is essential to a valid contract.").

(affidavit asserting that, as alleged in USD's counterclaim, VIA's performance failures, specifically those associated with the inclusion of balconies on the plans for redeveloping a historic building, resulted in Project delays and extra expenses). Further supporting the Court's finding that material factual disputes highlighted by USD preclude entry of judgment on the current record, VIA lists the following as "contested material facts" in its opposition to USD's summary judgment motion: (1) "Whether the parties contemplated the HUD Amendment to become part of the June 2011 Rockefeller Agreement"; (2) "Whether any consideration accompanied VIA's initialing of USD's requested reference to the HUD Amendment in December of 2012"; and (3) "Whether in December of 2012 . . . the parties contemplated that the HUD amendment's blank terms would supersede the parties' agreed handwritten modifications to the June 2011 Rockefeller Agreement." ECF No. 37, at 7.

Accordingly, because VIA fails to "point out" the absence of disputed facts associated with USD's counterclaim, and because USD, in its brief in opposition and supporting affidavits, expressly disputes the majority of the facts on which VIA relies in support of its motion for partial summary judgment, VIA's cross-motion for summary judgment is **DENIED**.

## V.  Conclusion

As outlined above, Defendant's summary judgment motion is **DENIED** based on USD's judicial admissions.  ECF No. 33. Plaintiff's cross-motion for partial summary judgment is **DENIED** based on the existence of disputed material facts.  ECF No. 38.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Mark S. Davis
United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November  4  , 2014

27